UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HUNTER COLTON SWART,<br>　　　　Plaintiff,<br>　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 16-CV-05383-LHK<br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 23, 31 |

Plaintiff Hunter Swart ("Swart"), appearing pro se, appeals the final decision of the Commissioner of Social Security ("Commissioner") denying Swart's application for Supplemental Security Income under Title XVI of the Social Security Act. Before the Court are Swart's motion for summary judgment, ECF No. 23 ("Swart Mot."), and the Commissioner's cross-motion for summary judgment, ECF No. 31 ("Comm. Mot."). Having considered the parties' briefs, the relevant law, and the record in this case, the Court hereby DENIES Swart's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND

### A. Swart's Age, Educational and Vocational Background, and Claimed Disability

1

Swart was born on October 9, 1991. Administrative Record ("AR") 130. He obtained a G.E.D. in 2008. AR 150. Although Swart testified that he used to help his father do handyman jobs, Swart has never been formally employed. AR 62, 65, 150. Swart alleges that he is disabled due to bipolar disorder, schizoaffective disorder, and attention deficit hyperactivity disorder. AR 149. Additional facts are discussed as necessary in the analysis.

**B.     Procedural History**

Swart filed an application for Supplemental Security Income on January 18, 2013. AR 83. Swart alleged that he became disabled in 2007.[1] AR 84. The Commissioner denied his application initially and on reconsideration. AR 95-99, 105-109. An administrative law judge ("ALJ") held a hearing on December 15, 2014. AR 36. Swart testified at the hearing, AR 59-64, as did impartial medical and vocational experts, AR 37-59, 65-72. An attorney represented Swart at the hearing, AR 36, and filed letter briefs before and after the hearing on Swart's behalf, AR 208-11, 218-22. On March 19, 2015, the ALJ found Swart not disabled after finding that Swart's substance use disorder was a contributing factor material to the determination of disability. AR 27-28. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on July 19, 2016. AR 1.

On September 20, 2016, appearing pro se, Swart filed a complaint in this Court seeking judicial review of the Commissioner's decision. ECF No. 1. On February 27, 2017, the Court granted Swart's request to extend the deadline to file a motion for summary judgment until April 21, 2017. ECF No. 19. The Court stated that no further extensions would be granted. *Id.* Swart did not file a motion for summary judgment by the deadline. On June 1, 2017, the Court issued an order to show cause why the case should not be dismissed for failure to prosecute and set a hearing for June 15, 2017. ECF No. 21. Swart did not respond in writing to the order to show cause, but he did appear at the hearing. ECF No. 26 at 2. At the hearing, Swart stated that he intended to

---

[1] Swart's attorney amended the alleged onset date to 2013 during the hearing before the administrative law judge. AR 45.

2
Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

1  prosecute his case. *Id.* Accordingly, the Court vacated its June 1, 2017 order to show cause. The Court set a deadline of June 29, 2017 for Swart to file a motion for summary judgment. *Id.* The Court also referred Swart to the Federal Pro Se Program for assistance with his case. *Id.*

On June 30, 2017, Swart filed a motion for summary judgment. ECF No. 27. On July 27, 2017, the Commissioner filed a cross-motion for summary judgment and opposition to Swart's motion for summary judgment. ECF No. 21. Swart did not file a reply.

## II. LEGAL STANDARD

### A. Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Cmm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Morgan*, 169 F.3d at 599.

### B. Standard for Determining Disability

An individual is considered disabled for the purposes of Title XVI of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The physical or mental impairment must be "of such severity that he is

3

not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to step two. At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If not, the claimant is not disabled. If so, the analysis proceeds to step three. At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four. At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If so, the claimant is not disabled. If not, the analysis proceeds to step five. At step five, the ALJ determines whether the claimant can perform other jobs in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

"The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray*, 554 F.3d at 1222. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

### III. DISCUSSION

#### A. Construing Swart's Pro Se Motion

"Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 925 (9th Cir. 2003). However, "a

4

pro se litigant is not excused from knowing the most basic pleading requirements." *Am. Ass'n of Neuropathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000). Swart's motion reads, in full:

> Plaintiff pleads for a Motion of Summary Judgement based [on] the Administrative Law Judges inaccurate interpretation of section 1614(a)(3)(A). See Exhibit A page 28. Whereas expert testimony from Dr. Mathew Neil Lilly MD, FRCP (C). page 658 paragraph 4 "I conclude that Mr. Swart's primary diagnosis is a primary psychotic disorder, not bipolar disorder, and Schizophrenia would be most likely with a Schizoaffective disorder being next on the list of possibilities." Further Dr. Lilly on page 659 of exhibit A "I believe that this diagno[s]is is highly relevant to any judicial or clinical decision, as his outcome, compliance and insight would be considered all be considered [sic] lower and more problematic than if he were to carry a diagnosis of bipolar disorder, which usually is accompanied by better insight into the illness, more consisten[t] medication adherence and better long term outcome. It is my opinion that Mr. Swart may benefit from a conservator,"
>
> In summary your honor I believe the written testimony from Dr. Lilly as outlined above provides ample evidence that Administrative Law Judge Phillip C. Lyman was in error in ruling against my client specific to his ability to receive Social Security Benefits.
>
> I therefore request that you rule in favor of my client and grant his request for Motion for Summary Judgement.

Swart Mot. at 1-2.

The Commissioner argues that Swart's motion violates Civil Local Rule 7-4, which requires that a party's brief contain a statement of the issues to be decided, a succinct statement of the relevant facts, and argument by the party, citing pertinent authorities. Civ. L.R. 7-4(a)(3)-(5). Because Swart "neglects to specify any specific aspect of the ALJ's decision that he challenges or to cite to any legal authority," the Commissioner urges the Court to summarily deny Swart's motion for summary judgment.[2] Comm. Mot. at 3. However, the Commissioner cites no cases

---

[2] The Commissioner also argues that Swart's motion violates Federal Rule of Civil Procedure 8(a), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)-(3). However, a motion for summary judgment is not a pleading, and so Rule 8 does not apply. *See* Fed. R. Civ. P. 7(a) (distinguishing between pleadings and motions); *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) ("A motion to dismiss is not a pleading."); *Kennedy v. Henderson*, 44 F. App'x 872, 872 n.1 (9th Cir. 2002) (unpublished) (stating that a "summary judgment motion was not a responsive pleading").

5
Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

where a court has summarily denied a pro se motion for summary judgment for failure to comply with Local Rule 7-4, and the Court is aware of none.

Construing Swart's motion liberally, the Court interprets Swart as arguing that the ALJ erred at step four by improperly discounting Dr. Lilly's medical opinion. The Court first summarizes the relevant medical evidence and the ALJ's opinion, and then the Court assesses whether the ALJ erred.

**B.  Relevant Medical Evidence**

    **1.  Hospitalizations and Outpatient Treatment**

Swart has been involuntarily hospitalized for severe psychiatric symptoms on three occasions. On December 31, 2012, Swart was admitted to the hospital after refusing to take his psychiatric medications and becoming increasingly manic, aggressive, hostile, and threatening at home. AR 224. Upon admission to the hospital, Swart was pressured, hyperverbal, manic, grandiose, and delusional. His speech was rambling. AR 224. On January 2, 2013, treating physician Dr. Ogami assessed that Swart had bipolar affective disorder with mania, although Dr. Ogami suspected that Swart may alternatively have schizoaffective disorder. AR 228. Dr. Ogami assigned Swart a global assessment of functioning ("GAF") score of 30, which indicates "behavior [that] is considerably influenced by delusions or hallucinations," "serious impairment in communications or judgment," or "inability to function in all areas." *Parslow v. Colvin*, No. C12-2269-MJP, 2013 WL 6038955, at *7 (W.D. Wash. Nov. 13, 2013) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)).[3] In the days

---

[3] "A GAF of 31-40 indicates some impairment in reality testing or communication (speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., avoiding friends, neglecting family, unable to work). A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). A GAF of 61-70 indicates '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful

following his admission, Swart continued to be grandiose, delusional, pressured, hostile, and irritable. AR 229, 255-56, 258. Between one and two weeks after admission Swart remained hypomanic, his affect continued to be blunted, his judgment was poor, and his insight was extremely limited. AR 239-53. Swart's mother told his treating physicians that Swart had been exhibiting psychosis and bizarre behavior since he was about 16 years old. AR 238.

Although Swart did not test positive for drugs during this first hospitalization, Swart's mother reported that Swart had been abusing Adderal and Ketamine prior to his hospitalization. AR 238. Swart later admitted that he had used LSD 8-10 times and had abused cough syrup about 8 times in the 2 months before his admission. AR 356-57; *see also* AR 296. Swart stated that the grandiose thoughts began while he was intoxicated. Swart also reported smoking marijuana almost daily, AR 357, including the night before he was hospitalized, AR 416. On May 10, 2013, treating physician Dr. Hensley noted that Swart "has tolerated the low-dose bupropion and getting off ziprasidone without any manic or psychotic symptoms. That is a sign that prior episode could have solely been drug related." AR 362.

After discharge from the hospital in mid-January 2013, Swart entered an intensive outpatient treatment program. During the next several months, Swart's manic symptoms largely subsided, although he continued to experience some grandiose thinking and depression. AR 288, 296, 300, 350, 371. In August 2013, Swart reported worsened referential ideas, hyperphilisophicality, and racing thoughts. His mother reported that he was using marijuana regularly, which he adamantly denied. However, Swart did admit to smoking marijuana within the past three weeks. Swart had also unilaterally decreased his psychotropic medication dosages. AR 375-76.

On March 4, 2014, Swart was involuntarily admitted to the hospital for a second time. AR

---

interpersonal relationships.' Diagnostic and Statistical Manual of Mental Disorders IV (DSM-IV) 31-34 (4th ed. 2000)." *Denby v. Colvin*, No. 1:15-cv-00191-SB, 2016 WL 917313, at *9 n.6 (D. Or. Mar. 8, 2016). "[T]he fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (issued May 27, 2013) abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability." *Id.* at *8 n.5.

411, 424. Upon admission, Swart was assigned a GAF of 30 and was observed to be "quite manic," loud, labile, euphoric, irritable, expansive, grandiose, paranoid, and making irrational comments. AR 408, 410-11. These symptoms persisted for several days. AR 481, 484, 491, 497. Swart tested positive for dextromethorphan, which is a cough syrup that has hallucinogenic properties when taken in large doses. AR 43, 411. Swart also tested positive for marijuana. AR 471. Swart's treating physicians recommended that he refrain from all drug use. AR 453. Swart reported that he had stopped taking his psychotropic medications. AR 424, 516; *see also* AR 588. During his two-week hospitalization, Swart responded well to restarting his medication, and he became calmer, better organized, less pressured, and less grandiose. AR 425. However, Swart continued to have delusions, his insight and judgment were "below fair," and his thinking was overly intellectualized and poorly organized. AR 442, 444, 448, 473.

Swart's symptoms continued to improve after his discharge in late March 2014, although he still reported some delusions. AR 516, 558, 584. By mid-April 2014, his GAF score had risen to 51-60, which represents moderate symptoms. AR 545-46. Swart continued to smoke marijuana. AR 557. By May 2014, Swart's GAF score was 61-70, which represents mild symptoms, and his treating psychiatrist, Dr. Lilly, diagnosed Swart with "bipolar I disorder, remission." AR 597. Dr. Lilly noted at that time that Swart's mother "didn't report any concerns suggestive of mania or depression." AR 597. By late August 2014, Swart's GAF score remained at 61-70 and Dr. Lilly recorded that Swart's primary complaint was attention deficit hyperactivity disorder. AR 596-97. Dr. Lilly recorded a fully normal mental status examination for the August 2014 visit. AR 599.

Swart was admitted to the hospital for the third time on November 21, 2014 after reportedly kicking a neighbor's dog, climbing onto the roof, and speaking "in religious babble." AR 609, 613. Upon admission, Swart was very agitated, pressured, irritable, labile, loose, tangential, and nonsensical. AR 615, 618. Swart tested positive for marijuana, diphenhydramine (which can be a hallucinogen when taken in high doses, *see* AR 46), and methylphenidate. AR

611-12, 619. Swart admitted that he had not been taking one of his psychotropic medications and had unilaterally decreased the dosage of another. AR 619. He was assigned a GAF score of 30. AR 620.

### 2. Medical Opinion Evidence

#### a. Matthew Lilly, M.D. (Treating Psychiatrist)

On December 11, 2014, Swart's treating psychiatrist at the time, Dr. Lilly, wrote a letter describing Swart's diagnoses, symptoms, and treatment. AR 658. Dr. Lilly began treating Swart in April 2014 and saw him most recently on August 25, 2014. AR 658. Dr. Lilly reported having contact with Swart by phone and email since August 2014. Dr. Lilly also described contacting Swart's mother to obtain her input before writing the letter. Swart's mother expressed concern that Swart's primary diagnosis should be a psychotic disorder, rather than bipolar disorder. AR 658. Dr. Lilly stated that upon reviewing his early notes, he had also considered a diagnosis of a psychotic disorder, based on Swart's odd presentation and unusual manner of speaking. AR 658. Dr. Lilly went on to conclude that Swart's primary diagnosis is a psychotic disorder, most likely schizophrenia or schizoaffective disorder. AR 658. Dr. Lilly explained that this diagnosis is significant because bipolar disorder, as opposed to a psychotic disorder, is usually accompanied by better insight into the illness, more consistent medication adherence, and better long-term functional outcome. AR 659.

#### b. Robert McDevitt, M.D. (Non-Examining Medical Expert)

Non-examining psychiatrist Dr. McDevitt testified at the hearing. AR 38. Dr. McDevitt opined that Swart had a psychotic disorder NOS that appeared to be precipitated by hallucinogenic drugs. AR 41. Dr. McDevitt also opined that Swart "needs to have chemical dependency treatment, medication, and compliance with that medication." AR 51. Dr. McDevitt stated that Swart met Listing 12.03 (for schizophrenia and other psychotic disorders) intermittently but not consistently. AR 51, 54. In response to a question from Swart's attorney, Dr. McDevitt opined that if Swart's substance abuse stopped, his underlying mental illness would not render him unable

9

to work. AR 58.

### c. State Agency Doctors (Non-Examining, Non-Treating)

Daniel Funkenstein, MD, a psychological consultant for the state agency, reviewed Swart's medical records in June 2013 and concluded that Swart had mild restriction of activities of daily living; moderate restriction of maintaining social functioning; moderate restriction of maintaining concentration, persistence, and pace; and one or two episodes of decompensation, each of an extended duration. AR 78. Dr. Funkenstein opined that Swart would be limited to performing simple, routine tasks with limited public contact. AR 81. Dr. Funkenstein opined that there was no evidence of a substance abuse disorder. AR 82. Accordingly, Dr. Funkenstein endorsed a finding that Swart was not disabled.

On reconsideration in October 2013, Eugene Campbell, Ph.D., a psychological consultant for the state agency, reviewed Swart's medical records and Dr. Funkenstein's initial determination of non-disability. Dr. Campbell affirmed Dr. Funkenstein's opinion. AR 90-93.

## C. ALJ's Opinion

The ALJ applied the five-step evaluation process for determining disability described in 20 C.F.R. § 416.920. At step one, the ALJ found that Swart had not engaged in substantial gainful activity since January 18, 2013. AR 13. At step two, the ALJ found that Swart had the following severe impairments: bipolar disorder, schizoaffective disorder, and attention deficit hyperactivity disorder. AR 13. At step three, the ALJ determined that none of Swart's impairments or combination of impairments met or medically equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14.

Before moving on to step four, the ALJ assigned the following RFC, which accounted for Swart's severe impairments as well as a substance abuse disorder:

> [T]he claimant has the residual functional capacity to lift, carry, push, and pull fifty pounds frequently and one hundred pounds occasionally; he can sit, stand and/or walk about six hours out of an eight-hour day. He can only frequently climb ladders, ropes, and scaffolds. He will miss more than two days of work per month. He has slight impairment in his ability to understand, remember, and carry out short, simple instructions, and his ability to make simple judgments or

10

> decisions. He has occasional limitation in his ability to interact appropriately with supervisors. He has frequent impairment in his ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, or coworkers, to respond appropriately to work pressures, or to respond appropriately to changes in the workplace.

AR 14.

In coming to this RFC, the ALJ extensively summarized Swart's medical records, including Swart's hospitalizations and treatment between hospitalizations. AR 14-19. With regard to the medical opinion evidence, the ALJ gave little weight to Dr. Lilly's opinion because "it appear[ed] to largely be based on information received from the claimant's mother, who is not a psychiatrist. Further, he had not seen the claimant; he had only had telephone conversations with him, the last one on August 25, 2014. (Hearing testimony)." AR 20.

At step four, the ALJ found that Swart had no past relevant work. At step five, the ALJ found that, considering Swart's age, education, work experience, and RFC based on all of the impairments, including the substance abuse disorder, there are no jobs that exist in significant numbers in the national economy that Swart could perform. AR 20.

Because the ALJ found that Swart had a substance abuse disorder, however, the ALJ was required to analyze whether the substance abuse was "a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 20 C.F.R. § 416.935(a). If substance abuse is a contributing factor material to the disability determination, then the claimant is ineligible for disability benefits. *See* 42 U.S.C. § 423(d)(2)(C); *Parra v. Astrue*, 481 F.3d 742, 744, 746 (9th Cir. 2007). To determine whether the substance abuse is material, the ALJ must assess whether the claimant would be disabled if he stopped the substance abuse. *See* 20 C.F.R. § 416.935(b).

Accordingly, the ALJ repeated parts of the five-step process, this time assuming

11

Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

that Swart stopped the substance abuse. AR 21. At step two, the ALJ determined that without substance abuse, Swart would continue to have severe impairments. At step three, the ALJ found that without substance abuse, Swart's impairments or combination of impairments would not meet or medically equal a Listing. AR 21.

Prior to step four, the ALJ determined that without substance abuse, Swart would have the RFC to perform work at all exertional levels with the following non-exertional limitations: slight limitations in his ability: to understand, remember, and carry out detailed instructions; to interact appropriately with the public and coworkers; and to respond appropriately to work pressures and changes in the work place. AR 22. The ALJ explained that "during the times when the claimant is not abusing substances, and even sometimes when he is, the claimant is able to function well enough to sustain employment." AR 24. The ALJ then restated the medical evidence of Swart's condition when he was not hospitalized. AR 24-26. The ALJ gave significant weight to the opinions of non-examining consultants Drs. Funkenstein and Campbell because their opinions were consistent with the medical evidence of record. AR 26. The ALJ also summarized Dr. McDevitt's opinion that Swart's psychotic breaks were precipitated by hallucinogens, although the ALJ did not explicitly assign a weight to Dr. McDevitt's opinion. AR 26-27.

Presumably skipping step four because Swart had no past relevant work, the ALJ concluded at step five that there would be a significant number of jobs in the national economy that Swart could perform if Swart stopped the substance abuse. AR 27. Specifically, the ALJ determined that Swart could perform the requirements of such representative occupations as farm laborer and landscape laborer. Because Swart would

12

Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

be considered not disabled in the absence of his substance abuse disorder, the ALJ concluded that the substance abuse disorder is a contributing factor material to the determination of disability. AR 27. Accordingly, the ALJ concluded that Swart was not disabled within the meaning of the Social Security Act. AR 28.

**D. Analysis**

The Court now turns to whether the ALJ erred by giving little weight to the opinion of treating psychiatrist Dr. Lilly. The opinions of treating physicians are typically given more weight than the opinions of doctors who do not treat the claimant. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject [the treating physician's] opinion without providing specific and legitimate reasons supported by substantial evidence in the record." *Id.* (internal quotation marks omitted). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray*, 554 F.3d at 1228 (quoting *Thomas*, 278 F.3d at 957). In the instant case, the ALJ gave two reasons for giving Dr. Lilly's opinion less weight: (1) Dr. Lilly's opinion appeared to be largely based on information from Swart's mother, who is not a psychiatrist; and (2) Dr. Lilly "had not seen [Swart]; he had only had telephone conversations with him, the last one on August 25, 2014." AR 20. The Court addresses these reasons in turn.

**1. The ALJ's First Reason: Dr. Lilly's Opinion Was Largely Based on Input from Swart's Mother**

The ALJ's first reason for discounting Dr. Lilly's opinion is specific, legitimate, and supported by substantial evidence. The fact that a psychiatrist's medical opinion takes into account or even largely depends on information from a lay person[4]—the patient or a member of

---

[4] Swart's mother is a registered nurse with experience working at a psychiatric hospital, *see* AR 216, but there was no evidence that she was formally treating her son, and so the ALJ need not

13
Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

the patient's family—generally is not a specific and legitimate reason to discount that opinion, unless the lay person's credibility has been properly discounted. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008); *Traugh v. Colvin*, No. 15cv1611-DMS-BGS, 2016 WL 3960536, at *25-26 (S.D. Cal. June 24, 2016) (apply principle to input from claimant's mother); *cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that ALJ properly discounted medical opinion that was based *solely* on subjective complaints and information submitted by family, friends, and a former counselor). The cases establishing and applying this principle concern medical opinions that rely on a patient's description of his subjective symptoms, such as pain or anxiety. *See, e.g.*, *Ryan*, 528 F.3d at 1199 (patient's description of anxiety and inability to interact with others); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (patient's description of pain). Indeed, "mental illness, and in particular, schizophrenia, is often diagnosed based on a patient's subjective reports." *Stanley v. Astrue*, No. CIV S-10-0563-EFB, 2011 WL 4565873, at *7 (E.D. Cal. Sept. 29, 2011).

However, in the instant case, Dr. Lilly did not merely rely on Swart's mother's description of Swart's behavior. Dr. Lilly initially diagnosed Swart with bipolar disorder. AR 596-97. Swart's mother then offered her opinion that Swart had been misdiagnosed with bipolar disorder and suggested a specific alternative diagnosis: a psychotic disorder. AR 658. Dr. Lilly observed that he had also initially considered a psychotic disorder diagnosis and then stated in a conclusory manner that "I conclude that Mr. Swart's primary diagnosis is a primary psychotic disorder, not bipolar disorder . . . ." AR. 658. Dr. Lilly did not explain why he had initially gone with the bipolar disorder diagnosis, whether Swart's condition had changed, or why he now believed schizophrenia was the correct diagnosis. AR 658-59. In other words, Dr. Lilly offered no explanation as to why he was changing his diagnosis other than that Swart's mother had suggested

---

give her opinion any special deference. *See Oetinger v. Astrue*, No. 10-379-PK, 2011 WL 4406308, at *6-7 (D. Or. Aug. 23, 2011) (stating that SSR 06-03p, which governs the consideration of evidence from nurses, "does not suggest the ALJ must accord deference to parental lay witness observations made in a personal capacity," as opposed to those made in a professional capacity).

14
Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

it. In this context—where the input from the lay person is a suggested diagnosis, not merely a description of symptoms—Dr. Lilly's apparent heavy reliance on the input of Swart's mother is a specific and legitimate reason to discount Dr. Lilly's opinion. Additionally, this reason is supported by substantial evidence. The record contains only two treatment notes from Dr. Lilly. Both include a diagnosis of bipolar disorder; neither mentions schizophrenia or another psychotic disorder. *See* AR 596-602.

### 2. The ALJ's Second Reason: Dr. Lilly Had Not Seen Swart in Person

The ALJ's second reason for discounting Dr. Lilly's opinion—that Dr. Lilly had not seen Swart in person and had only had telephone conversations with him—is not supported by substantial evidence. Dr. Lilly's letter states that he first met Swart in April 2014 and that Swart "was last seen in clinic on August 25, 2014." AR 658. Dr. Lilly exchanged emails and had several phone conversations with Swart after the August 2014 office visit. *Id.* The medical records show that Dr. Lilly saw Swart in person in April 2014, had a phone follow-up in May 2014, and saw Swart again in person in August 2014. AR 596. Swart's hearing testimony, which the ALJ cited as showing that Dr. Lilly had not treated Swart in person, does not prove otherwise. At the hearing, the ALJ asked Swart, "In the last . . . almost two years have you been seeing a psychiatrist on a regular basis?" AR 51. Swart answered, "If I have not seen him, like physically gone to his office, we've had phone conferences and that's at least this past year." AR 51. In light of the medical records and Dr. Lilly's letter, the most sensible reading of Swart's testimony is that he was clarifying that some—but not all—of his contacts with Dr. Lilly were by phone. Accordingly, substantial evidence does not support the ALJ's statement that Dr. Lilly "had not seen the claimant; he had only had telephone conversations with him, the last one on August 25, 2014." However, because the ALJ's first reason for discounting Dr. Lilly's opinion was permissible, the ALJ did not err in giving Dr. Lilly's opinion little weight.

### 3. Even If the ALJ Erred, Any Error Was Harmless

Even when an ALJ errs, reversal is not warranted if the error is harmless. *Molina v.*

15

*Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Id.* (internal quotation marks omitted). Accordingly, "in each case [the Court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.* In the instant case, even if the ALJ did err by discounting Dr. Lilly's opinion, any such error was harmless. The primary point of Dr. Lilly's letter was that Swart's main diagnosis should be schizophrenia or schizoaffective disorder rather than bipolar disorder. AR 658-59. Presumably this diagnosis is relevant to the disability determination because bipolar disorder "usually is accompanied by better insight into the illness, more consistent medication adherence and better long term functional outcome" than a psychotic disorder. AR 659. In other words, Swart's history of noncompliance with his medications would be more likely to be a function of his illness if he were diagnosed with a psychotic disorder rather than with bipolar disorder. However, the ALJ did not ignore the possible diagnosis of schizophrenia or schizoaffective disorder. To the contrary, the ALJ found that schizoaffective disorder was one of Swart's severe impairments. AR 13. The ALJ also appeared to give great weight to the opinion of Dr. McDevitt, who testified that Swart had a psychotic disorder. AR 41. As a result, fully crediting Dr. Lilly's opinion as to Swart's diagnosis would not have "alter[ed] the outcome of the case," *Molina*, 674 F.3d at 1115, because the ALJ already incorporated this diagnosis into his analysis.

Nor would crediting Dr. Lilly's point about medication non-compliance have made a difference to the outcome of the case. The dispositive issue in this case was whether Swart's substance abuse was a factor material to the disability determination. After reviewing extensive medical evidence, *see* AR 14-20, 24-26, the ALJ concluded that Swart's substance abuse was material to the disability determination, AR 27-28. Dr. Lilly's letter did not address Swart's substance abuse or the effect of that substance abuse on Swart's condition. AR 658-59. Moreover, Dr. Lilly's own treatment notes reflect that Swart's second hospitalization was "postulated to be triggered" in part by substance abuse. AR 601. Accordingly, fully crediting Dr.

16
Case No. 16-CV-05383-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Lilly's opinion would not have changed the ALJ's conclusion that Swart's substance abuse was material to the disability determination.

In conclusion, the ALJ did not err by discounting Dr. Lilly's opinion because the ALJ offered a specific and legitimate reason supported by substantial evidence for giving Dr. Lilly's opinion less weight. Even if the ALJ had erred, however, any such error would have been harmless.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Swart's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 24, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge